UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
JENNIFER FLORES, on behalf of
herself and others similarly situated,

              *Plaintiff*,

   -against-


CITY OF NEW YORK, et al.,

              *Defendants*.
--------------------------------------X

**Memorandum and Order**

19-CV-5763(KAM)(RLM)

**KIYO A. MATSUMOTO, United States District Judge:**

        Presently before the court in this civil rights lawsuit against the City of New York and several of its police officers is the defendants' motion (ECF No. 14) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to partially dismiss the plaintiff's amended complaint (ECF No. 3), which was filed on behalf of herself and others similarly situated.  For the reasons herein, the defendants' motion to dismiss is GRANTED in part and DENIED in part.  The court holds that the plaintiff may seek declaratory and injunctive relief, and proceed on her claims pursuant to the First, Fourth, and Fourteenth Amendments.

## Background

        The following alleged facts are drawn from the plaintiff's amended complaint, which the court accepts as true at this stage of the litigation.

The plaintiff, Jennifer Flores ("Ms. Flores"), is a female resident of New York City. (ECF No. 3, Amended Complaint ("Am. Compl."), ¶ 31.)  On the evening of October 12, 2016, Ms. Flores was arrested by New York City Police Department ("NYPD") officers in Queens, New York, on misdemeanor charges for obstructing government administration. (*Id.* ¶¶ 69-70.)  She alleges that her arrest resulted after she advised her friends of their rights while they were being searched by NYPD officers. (*Id.*)  At the time of her arrest, Ms. Flores was experiencing what she describes as "particular heavy" bleeding consistent with her menstrual cycle. (*Id.* ¶ 71.)  Ms. Flores was wearing a sanitary pad, but did not have additional feminine hygiene products with her at the time of her arrest. (*Id.* ¶ 72.)

Upon her arrest, NYPD officers transported Ms. Flores to the 108th police precinct. (*Id.* ¶ 74.)  Ms. Flores informed multiple NYPD officers at the precinct that she was experiencing menstrual bleeding, and she requested feminine hygiene products. (*Id.* ¶ 76.)  She was told by multiple NYPD officers that no such products were available at the precinct. (*Id.* ¶¶ 77-79.)  As advised by the "John Doe" defendant police officers, Ms. Flores attempted to use toilet paper and gauze to absorb the bleeding, but neither was adequate, and her clothes were soiled and ruined as a result of the bleeding. (*Id.* ¶¶ 79-80.)  After Ms. Flores

2

had been detained for approximately six hours, her attorney
brought her tampons. (*Id.* ¶ 81.)

The following day, Ms. Flores appeared for arraignment
wearing the same clothes that had been bloodied. (*Id.* ¶ 82.)
The criminal court granted Ms. Flores an adjournment in
contemplation of dismissal pursuant to New York Criminal
Procedure Law § 170.55, and her case was dismissed and sealed.
(*Id.*)

On October 11, 2019, Ms. Flores initiated the instant
action by filing a complaint on behalf of herself and others
similarly situated, against the City of New York (the "City")
and several "John Doe" NYPD officers (together with the City,
"Defendants"). (ECF No. 1, Complaint.) On October 18, 2019,
Ms. Flores amended her complaint. (ECF No. 3, Am. Compl.) Ms.
Flores claims Defendants deprived her of her rights under the
United States Constitution, pursuant to 42 U.S.C. § 1983
("Section 1983"), on the following grounds: deprivation of the
privileges and immunities guaranteed by the First, Fourth,
Fifth, Eighth,[1] and Fourteenth Amendments (Am. Compl. ¶ 88);
discrimination in violation of the Equal Protection Clause on
the basis of sex (*id.* ¶ 106); a violation of the Due Process

---

[1] Ms. Flores concedes in her opposition to the instant motion that her Fifth
and Eighth Amendment claims are properly dismissed.

3

Clause as a result of deliberate indifference to her medical needs (*id.* ¶ 111); and an unconstitutional policy or practice in violation of the Due Process Clause (*id.* ¶ 117).  Ms. Flores seeks declaratory and injunctive relief (1) requiring the NYPD to make feminine hygiene products available to all women in the NYPD's custody, (2) requiring NYPD training on the medical necessity of such products, and (3) directing the NYPD to put in place a system for monitoring the supplies of such products at precincts to ensure that they are always available.  (*Id.* at 14.)  She also seeks compensatory damages on behalf of herself and the putative class.  (*Id.*)

Defendants moved to dismiss portions of the amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing (with regard to Ms. Flores's claims for declaratory and injunctive relief), and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (with regard to Ms. Flores's claims under the Fifth and Eighth Amendments, and the Equal Protection Clause of the Fourteenth Amendment).  (ECF No. 14, Motion to Dismiss; *see* ECF No. 15, Memorandum in Support ("Def. Mem."); ECF No. 17, Reply.)  Ms. Flores opposed the motion.  (ECF No. 16, Memorandum in Opposition ("Opp.").)

4

**Legal Standards**

In analyzing a motion to dismiss pursuant to Federal
Rule of Civil Procedure 12(b)(1) for lack of Article III
standing, courts must determine whether the plaintiff's
complaint "contain[s] sufficient plausible allegations" to
invoke the court's subject matter jurisdiction over the case or
controversy.  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55
(2d Cir. 2016).  Article III of "the United States Constitution
restricts federal courts to deciding 'Cases' and 'Controversies'
and thus imposes what the Supreme Court has described as the
'irreducible constitutional minimum of standing,'" which
requires a plaintiff to show an "injury-in-fact, causation, and
redressibility."  *Baur v. Veneman*, 352 F.3d 625, 631-32 (2d Cir.
2003) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560
(1992)).  "To qualify as a constitutionally sufficient injury-
in-fact, the asserted injury must be 'concrete and
particularized' as well as 'actual or imminent, not conjectural
or hypothetical.'"  *Id.*

In addition, under Federal Rule of Civil Procedure
12(b)(6), a plaintiff's claims must be dismissed if the
plaintiff fails to state a claim upon which relief may be
granted.  Fed. R. Civ. P. 12(b)(6).  In deciding a motion to
dismiss under Rule 12(b)(6), the court evaluates the sufficiency

of the plaintiff's allegations under a "two-pronged approach." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, courts are not bound to accept legal conclusions at this stage. *See id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Second, the court must assume all well-pleaded facts are true, and then "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

Plaintiff brought this action pursuant to Section 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).

To maintain a Section 1983 claim, a plaintiff must plausibly allege two elements.  First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).  Second, "the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Id.*; *see also McCugan v. Aldana- Brnier*, 752 F.3d 224, 229 (2d Cir. 2014).

## Discussion

Defendants first move to dismiss Ms. Flores's claims for declaratory and injunctive relief pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Ms. Flores lacks standing to seek declaratory and injunctive relief.  (Def. Mem. 5-7.)  Second, Defendants argue that Ms. Flores cannot state a claim pursuant to certain of the Constitutional rights she has asserted in her amended complaint.  (*Id.* at 8-11.)  The court will address both arguments in turn.

### I. Standing to Seek Declaratory and Injunctive Relief

Defendants argue that Ms. Flores lacks standing to seek declaratory and injunctive relief because future harm to her is not "imminent," because she was arrested one time in the past.  (Def. Mem. at 6-7.)

Defendants rely on the seminal case on the issue of standing to seek declaratory and injunctive relief for alleged violations of the Constitution: the Supreme Court's decision in *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).  In *Lyons*, the plaintiff had been subjected to a choke hold by police officers, and sought an injunction to prevent the police from using choke holds in the future, absent the threat of deadly force.  *Id.* at 98.  The Supreme Court held that the plaintiff, who was proceeding on behalf of himself only, could not establish standing to seek injunctive relief, because the single incident alleged in his complaint did "nothing to establish a real and immediate threat that he would again be stopped for a traffic violation . . . by an officer or officers who would illegally choke him" again in the future.  *Id.* at 105.  The Supreme Court noted that "[n]othing" in the police's policy "suggest[ed] that the choke holds . . . [were] authorized absent some resistance or other provocation," and further stated that the plaintiff would have to show not only that another encounter with the police was likely, but "either, (1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter . . . or, (2) that the City ordered or authorized police officers to act in such manner."  *Id.* at 106, 110 (emphasis in original).

8

Here, Defendants contend that Ms. Flores's case falls squarely within the holding of *Lyons*, and that she likewise lacks standing because she has not shown that she is likely to be arrested and detained while menstruating again. (Def. Mem. at 6-7.) Ms. Flores notes that *Lyons* was a split 5-4 decision, with the dissenting justices strongly disagreeing with the majority based on a long line of precedent interpreting the standing requirement. (Opp. at 3.) Ms. Flores also argues that her status as a New York City resident means that she will always be subjected to the City's "law enforcement apparatus," and she could be "subjected to a custodial arrest" at "any time" in the future. (*Id.* at 4.)

These first two arguments by Ms. Flores are slightly off the mark. Though *Lyons* was a 5-4 decision, and a reasonable legal mind could disagree with the majority, it is still binding on this court. And in *Lyons*, the majority was clear that living under the police's jurisdiction does not implicate an imminent threat of harm that is sufficient to convey standing for purposes of injunctive relief. *See Lyons*, 461 U.S. 105-06.

Ms. Flores further argues that the holding in *Lyons* does not necessarily control, based on the specific facts alleged in her case. (Opp. at 6.) The court agrees, at least

at this stage, that *Lyons* is distinguishable and that Ms. Flores has alleged sufficient facts to confer standing.

In a variety of contexts, the Second Circuit has held that *Lyons* is inapplicable where the facts alleged were distinguishable.  For example, in a class action in which child plaintiffs sought an injunction against the police's allegedly coercive interrogation tactics of minors facing possible delinquency charges, the Second Circuit held that the plaintiffs, "as a certified class," were distinguishable from the lone plaintiff in *Lyons*.  *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998).  Like the plaintiffs in *Deshawn*, Ms. Flores seeks to proceed on behalf of all those similarly situated.  It remains to be determined whether class treatment under Federal Rule of Civil Procedure 23 is appropriate in this case, but if a class of menstruation-age women is ultimately certified, there will be a far greater likelihood that one member of the class is currently detained, or could be subjected to a custodial detention without feminine hygiene products in the future, thus giving the class standing to seek injunctive relief.

Further, in *Deshawn*, the Second Circuit held that "in *Lyons*, there was no proof of a pattern of illegality as the police had discretion to decide if they were going to apply a

10

choke hold and there was no formal policy which sanctioned the application of the choke hold." *Id.* at 344-45.  "In contrast, the challenged interrogation methods in [*Deshawn*] [were] officially endorsed policies[.]" *Id.*  Here, similarly, Ms. Flores has alleged that the NYPD has a widespread practice of not having or providing feminine hygiene products to detainees at any of its precincts.  (Am. Compl. ¶¶ 2-3.)  Thus, although the plaintiff in *Lyons* failed to show "that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter," *Lyons*, 461 U.S. at 106, Ms. Flores has alleged that all women arrested in New York City are deprived of feminine hygiene products while detained at an NYPD precinct, in every circumstance.

The Second Circuit also found *Lyons* inapplicable to a case in which a plaintiff sought to enjoin the federal government's practice of approving "downed" livestock for human consumption, due to the risk of contracting disease from such livestock.  *Baur*, 352 F.3d at 640.  In *Baur*, the Second Circuit noted that in *Lyons*, "the occurrence of the alleged future injury rested on the independent actions of third-parties not before the court, rendering the asserted injury too speculative for standing purposes." *Id.*  In other words, the plaintiff in *Lyons* lacked standing to seek an injunction against a

hypothetical police officer, who was not before the court, to prevent a particular action in the future.  Here, Ms. Flores is not seeking to prevent the actions of a hypothetical officer; she seeks to require the City (which is a defendant before the court) to require that the NYPD stock all of its precincts with feminine hygiene products, to monitor the stock of those products, and to train its police officers about the need for them.  She does not seek to require or prevent any action by police officers who are not before the court.

Although the plaintiff in *Baur* faced "a chain of contingencies [that] may need to occur . . . to actually contract" a disease resulting from the government's policy, the Second Circuit held that "the relevant 'injury' for standing purposes may be exposure to a sufficiently serious risk of medical harm—not the anticipated medical harm itself—thus only the exposure must be imminent, not the actual onset of disease." *Id.* at 641.  Here, Ms. Flores alleges a serious risk of medical harm on behalf of women who may be menstruating and are denied feminine hygiene products when they are arrested and detained, because "tampons and sanitary pads serve multiple medical purposes."  (Am. Compl. ¶ 9.)  Indeed, Ms. Flores alleges that the Food and Drug Administration classifies tampons and sanitary pads as "medical devices," and that the Mayor of New York has

12

recognized them as a "necessity." (*Id.* ¶¶ 8, 12.)  As alleged by Ms. Flores, the risk of harm, therefore, is a serious medical risk, more similar to the risk at issue in *Baur* than the one in *Lyons*.  To hold that Ms. Flores does not have standing to seek declaratory and injunctive relief on behalf of herself and others similarly situated would effectively mean that no detainee could ever prevent the City from engaging in a practice that poses a health risk to detainees, because health risks to any one individual will always require a chain of events (in this case, being arrested while menstruating).  *See Baur*, 352 F.3d at 641 ("[U]nder the dissent's analysis, . . . no consumer would have standing to sue, as it would remain purely speculative that any individual consumer would actually consume contaminated beef and contract [disease] as a result.").

Finally, in *Baur*, the Second Circuit also emphasized that "[t]o survive a motion to dismiss, [the plaintiff] need not present more specific scientific evidence or statistical verification to prove that the risk actually exists."  *Id.* at 642.  The court can address the issue of standing again "at a later procedural stage where [the] plaintiffs can properly be expected to present a full factual record to meet their burden of establishing standing."  *Id.*

Accordingly, at this stage, the court declines to dismiss Ms. Flores's claims for declaratory and injunctive relief due to lack of standing.  Once the court decides whether a class will be certified, and more facts about the plaintiffs and the City's practices are available, the court may revisit the issue, if appropriate.

## II. Equal Protection Claim

Next, Defendants argue that Section 1983 does not provide any substantive rights, and that Ms. Flores has failed to identify the deprivation of any substantive rights protected by the Fifth or Eighth Amendments, or by the Fourteenth Amendment's Equal Protection Clause.  (Def. Mem. at 8-11.) Defendants have not moved to dismiss Ms. Flores's claims pursuant to the First and Fourth Amendments, or the Due Process Clause of the Fourteenth Amendment, nor do they argue that Ms. Flores lacks standing to pursue compensatory damages stemming from the alleged constitutional violations.  (*Id.* at 1 n.1.)

In her opposition to the motion to dismiss, Ms. Flores concedes that she cannot state a claim for a violation of the Fifth or Eighth Amendments, and that those claims "are properly dismissed."  (Opp. at 7.)  The court, therefore, dismisses Ms. Flores's Fifth and Eighth Amendment claims.

14

The only substantive constitutional right at issue in Defendants' motion is thus whether Ms. Flores has stated a claim pursuant to the Equal Protection Clause of the Fourteenth Amendment.  The Fourteenth Amendment directs that the government may not "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, Sec. 1.  "The Equal Protection Clause of the Fourteenth Amendment is 'essentially a direction that all persons similarly situated should be treated alike.'"  *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)).  "[S]ex-based discrimination may be actionable under [Section] 1983 as a violation of equal protection."  *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006).  Where a governmental practice that is "gender-neutral on its face is challenged on the ground that its effects upon women are disproportionally adverse, a twofold inquiry is appropriate."  *Collier v. Barnhart*, 473 F.3d 444, 448 (2d Cir. 2007) (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 274 (1979) (alteration omitted)).  "The first question is whether the statutory classification is indeed neutral in the sense that it is not gender-based."  *Id.*  "If the classification itself, covert or overt, is not based upon gender, the second question is whether the adverse effect reflects invidious

15

gender-based discrimination." *Id.* "In this second inquiry, impact provides an important starting point, but purposeful discrimination is the condition that offends the Constitution." *Id.*

Here, Ms. Flores argues that the failure to provide feminine hygiene products at NYPD precincts "clearly evinces a gender discriminatory policy, practice or pattern on the part of" the City. (Opp. at 9.) Ms. Flores relies on the standard set forth by the Supreme Court in *United States v. Virginia*, 518 U.S. 515 (1996), although her case presents a slightly different circumstance. In *Virginia*, the Supreme Court addressed a state policy of admitting only men to a public military academy. *Id.* at 520. In contrast, here, it is not alleged that the City adopted a policy or practice that classified men and women differently. Rather, Ms. Flores's allegation is that despite the apparent gender neutrality of the City's policy about which medical products to stock for detainees at police precincts, the adverse effect on women reflects invidious gender-based discrimination.

Ms. Flores's allegation is bolstered by her contention that the Mayor of New York, upon requiring that inmates in correctional facilities have access to feminine hygiene products, acknowledged that "feminine hygiene products are a

*necessity* – not a luxury." (Am. Compl. ¶ 8 (emphasis added).)
The fact that the City's top official acknowledged the
importance of providing this "necessity" to female inmates
raises an inference regarding the City's decision to deny the
same to women who are detained at NYPD precincts. Moreover, it
is not the case that the City has provided inadequate medical
products in a blanket manner, as bandages and other first aid
equipment are allegedly available at precincts. (*Id.* ¶ 25.) It
is only the medical products that women need that are not
available.

The court acknowledges that another district court
facing a similar allegation has held that the "requirement of
menstrual pads [as] a unique female requirement . . . do[es] not
go to whether the [] Defendants' failure to provide feminine
hygiene products was the result of discriminatory intent."
*Turano v. Cty. of Alameda*, No. 17-cv-6953 (KAW), 2018 WL
3054853, at *8 (N.D. Cal. June 20, 2018). Ultimately, to
prevail on her Equal Protection claim, Ms. Flores will indeed
have to show more than just a disparate impact of the City's
practice on women. *See Reynolds v. Barrett*, 685 F.3d 193, 201
(2d Cir. 2012) ("[E]qual [P]rotection claims under [Section]
1983 cannot be based solely on the disparate impact of a
facially neutral policy"); *see also Vill. of Arlington Heights*

17

*v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–65 (1977)
("[O]fficial action will not be held unconstitutional solely
because it results in a racially disproportionate impact[,]" and
"[p]roof of racially discriminatory intent or purpose is
required to show a violation of the Equal Protection Clause.").

Nonetheless, "discriminatory intent is rarely
susceptible to direct proof." *Hayden v. Paterson*, 594 F.3d 150,
163 (2d Cir. 2010).  Where there is a disparate adverse impact
of a neutral policy on a protected class, that "impact provides
an important starting point" for analyzing an Equal Protection
claim. *Collier*, 473 F.3d at 448.  Ultimately, a plaintiff must
show that the "invidious discriminatory purpose was a motivating
factor" behind the policy or practice, which is a complex
question that "demands a sensitive inquiry into such
circumstantial and direct evidence of intent as may be
available." *Arlington Heights*, 429 U.S. at 266.  The court is
unable to make that sensitive inquiry in this case without
examining evidence of the City's intent, which will only be
available if Ms. Flores is permitted to proceed to discovery.

Ms. Flores has alleged that all women detained at NYPD
precincts are forced to go without medically necessary products,
and the denial of these products has subjected "hundreds, if not
thousands, of menstruating female pre-trial detainees . . . to

18

highly unsanitary conditions, substantial risk of infection, humiliation, and degradation," none of which is suffered by male detainees.  (Am. Compl. ¶ 3); *see Feeney*, 442 U.S. at 279 n.24 (what an "official entity is 'up to' may be plain from the results its actions achieve, or the results they avoid").  Ms. Flores has further alleged that the Mayor of New York recognized the "necessity" of these products for women, and yet, the City still does not provide them to women detained by the NYPD.  At this stage, these allegations are sufficient to raise an inference of discriminatory intent, and for Ms. Flores to state a plausible claim that the City violated the Equal Protection Clause of the Fourteenth Amendment.  Ultimately, to prevail on this claim, Ms. Flores will have to show that a discriminatory intent was at least a motivating factor in the City's decision to do so.  For now, however, she has alleged a plausible claim sufficient to survive Defendants' motion to dismiss.

Accordingly, Defendants' motion to dismiss Ms. Flores's Equal Protection claim is denied.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.  Defendants' motion is granted with respect to Ms. Flores's claims pursuant to the Fifth and Eighth Amendments, and those claims are

19

dismissed.   Defendants' motion to dismiss is denied with respect to standing, and with respect to Ms. Flores's other claims.   The case shall proceed on Ms. Flores's claims pursuant to the First and Fourth Amendments and pursuant to the Equal Protection and Due Process Clauses of the Fourteenth Amendment.   The parties shall proceed with discovery under the supervision of Magistrate Judge Roanne L. Mann.

**SO ORDERED.**

Dated:     Brooklyn, New York
           February 19, 2021

                                   _____/s/_____
                                   Hon. Kiyo A. Matsumoto
                                   United States District Judge